<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>
No. 16-2690

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| JILL STEIN and LOUIS NOVAK, | ) |
| | ) |
|       Plaintiffs-Appellees, | ) |
| | ) |
| v. | ) |
| | ) |
| CHRISTOPHER M. THOMAS, in his official capacity as Director of Elections for the State of Michigan, | ) ) ) |
| | ) |
| & | ) |
| | ) |
| JEANETTE BRADSHAW, NORMAN D. SHINKLE, JULIE MATUZAK, and COLLEEN PERO, in their official capacities as Members of the Michigan Board of Canvassers, | ) ) ) ) |
| | ) |
|       Defendants, | ) |
| | ) |
| & | ) |
| | ) |
| The MICHIGAN REPUBLICAN PARTY, | ) |
| | ) |
| & | ) |
| | ) |
| WILLIAM D. SCHUETTE, in his official capacity as Attorney General of the State of Michigan, | ) ) |
| | ) |
|       Intervenors-Defendants-Appellants. | ) |

**FILED**
Dec 06, 2016
DEBORAH S. HUNT, Clerk

O R D E R

Before:  CLAY, MCKEAGUE, and DONALD, Circuit Judges.

Defendant-Intervenors, the Michigan Republican Party and Michigan Attorney General Bill Schuette ("Defendants"), appeal the temporary restraining order issued by the district court

on December 5, 2016, requiring Michigan election officials to commence recounting the presidential votes cast in the recent presidential election two days earlier than would have been provided for under Michigan law.  For the following reasons, we **AFFIRM** the district court's temporary restraining order.[1]

## BACKGROUND

On November 8, 2016, the nation conducted a general election to determine, among other offices, the forty-fifth President of the United States.  Republican Party presidential candidate Donald J. Trump ("Trump") was declared the winner in the State of Michigan by 10,704 votes.

On November 30, 2016, Green Party presidential candidate Jill Stein ("Stein") petitioned the State of Michigan for a recount of its presidential ballots.  Trump subsequently objected to the recount, arguing among other things that the recount was invalid under Michigan law.  On December 2, 2016, the Michigan State Board of Canvassers deadlocked as to Trump's objections.  Pursuant to Michigan law, Trump's objections therefore were automatically rejected. *See* Mich. Comp. Laws § 168.22d(2).  Michigan law provides that after the State Board of Canvassers resolves objections to a recount, the recount cannot begin until two business days have passed ("waiting period law").  *See id.* § 168.882(3).  Because December 2, 2016 was a Friday, the recount therefore could not begin until Wednesday, December 7, 2016, two business days and four days total after the Board of Canvassers' decision.

Federal law requires that all disputes over a state's delegation to the Electoral College be resolved by December 13, 2016.  *See* 3 U.S.C. § 5.  On December 2, 2016, Stein and Michigan voter Louis Novak filed the instant federal lawsuit against Michigan election officials in the Eastern District of Michigan asserting that Michigan's waiting period law would make it impossible for the recount to be completed by the federal deadline.  Plaintiffs asserted various First and Fourteenth Amendment claims under 42 U.S.C. § 1983 all seeking the same relief—an

---

[1] We **GRANT** Attorney General Schuette's motion to intervene in this appeal, but **DENY** his and the Michigan Republican Party's separate motions to stay the district court's order **AS MOOT**.

order requiring the recount to begin immediately without observing the waiting period law. Stein also filed an application for a temporary restraining order seeking the same relief. On December 5, 2016, the district court granted the restraining order and required the recount to begin at noon the same day. Defendants filed a notice of appeal in this Court challenging the restraining order, and have moved us for a stay of the district court's order.

While these federal proceedings were going on, Trump filed applications before the Michigan Court of Appeals and the Michigan Supreme Court attacking the recount on substantive grounds under Michigan law. The parties filed briefing before the Michigan Court of Appeals on December 5, 2016, and that court will hear arguments on the matter on December 6, 2016.

## DISCUSSION

### I.    Article III Standing

At the outset, we are obliged to determine whether Article III standing exists to adjudicate this matter. We note that this is a separate question from whether a Stein had the right to initiate the recount in the first place, an issue of Michigan state law that is not before us, and will in any event be determined by the Michigan courts. In order to establish Article III standing, a party must demonstrate: (i) that she has suffered an injury in fact that is (ii) fairly traceable to the conduct being challenged, and (iii) the injury will likely be redressed by a favorable decision from the federal court. *See, e.g.*, *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016).

We hold that Stein and Novak have demonstrated Article III standing to bring this lawsuit. Michigan law provides for election recounts under certain circumstances. *See* Mich. Comp. Laws §§ 168.880 *et seq.* Stein and Novak have invoked the recount right created by Michigan law, and although the Michigan state courts may eventually decide otherwise, to date, no court has held that Stein and Novak's recount petition was invalid. Accordingly, Plaintiffs'

allegations that the waiting period law will make it functionally impossible to exercise their state law recount right alleges an injury in fact sufficient to satisfy Article III. This injury is fairly traceable to the waiting period law, which as the district court noted, would have eliminated roughly one-third of the time available for the recount.

Moreover, Plaintiffs' injury was redressable by a favorable order from the district court. Indeed, by obtaining the temporary restraining order Plaintiffs sought, the recount was initiated in sufficient time to be completed by the December 13, 2016 federal deadline. Accordingly, Plaintiffs are properly before our Court.

## II.    Appealability of the Temporary Restraining Order

Plaintiffs assert that we lack jurisdiction over this appeal because a temporary restraining order is not a reviewable interlocutory order. We disagree.

Generally, temporary restraining orders are not immediately appealable. *See Office of Pers. Mgmt. v. Am. Fed'n of Gov't Employees, AFL–CIO*, 473 U.S. 1301, 1303–05 (1985). We have acknowledged exceptions to this rule that permit appeal whenever irreparable harm will occur before the order expires, or the order requires "affirmative action" rather than simply preserving the status quo. *Ne. Ohio Coalition for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005–06 (6th Cir. 2006).

Here, the district court's temporary restraining order required affirmative action—it ordered Michigan officials to begin the recount two days before the time provided under Michigan law. We therefore hold that the district court's order was an appealable interlocutory order.

## III.    Propriety of the Temporary Restraining Order

We review a district court's decision to grant a temporary restraining order for abuse of discretion. *Id.* at 1009. "To determine whether a TRO should be stayed," we consider the same factors used to determine whether the TRO should be issued in the first place, including:

"(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Id.* "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991). "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Blackwell*, 467 F.3d at 1009.

We hold that the district court did not abuse its discretion in granting the temporary restraining order at issue here. Plaintiffs have made a compelling showing that they will be irreparably harmed in the absence of the temporary restraining order. Defendant Thomas admitted before the district court that it would have been extremely difficult and unlikely—a "monumental undertaking"—for the State to have completed the recount before the December 13, 2016 federal deadline if it had observed the waiting period law. If the recount could not be completed by the federal deadline, the right to a recount provided under Michigan law would have been effectively worthless. Facing the potential that Plaintiffs' state recount right may have been deprived entirely by the waiting period law, we cannot say that the district court abused its discretion in determining that Plaintiffs would suffer irreparable harm without a TRO.

Because Plaintiffs made an extremely strong showing of irreparable harm, they were not required to make as a strong a showing of a likelihood of success on the merits. *Blackwell*, 467 F.3d at 1009. Plaintiffs met this lowered bar. As the district court recognized, once a state legislature vests its citizens with election rights, those rights are fundamental and are protectable by the First and Fourteenth Amendments. *See, e.g.*, *Bush v. Gore*, 531 U.S. 98, 104 (2000) (non-precedential); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008). Plaintiffs made a sufficient showing that the State of Michigan granted them a right to a recount;

once that premise is established, we think it clear that the State could not use arbitrary or unreasonable procedural rules to make that right a nullity.

When evaluating whether state election procedures violate First and Fourteenth Amendment election rights, we use the framework set out by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Under the *Anderson/Burdick* framework, we weigh the burden to a plaintiff's First and Fourteenth Amendment rights against the interests put forward by the State as justifications for its election procedures. *Burdick*, 504 U.S. at 434. Our inquiry is rigorous when the burden on a plaintiff's rights is severe, and more relaxed when the burden is slight or minimal. *Id.*

Here, as explained earlier, Plaintiffs would have essentially lost their state-recognized recount right entirely if the waiting period law had been followed. This is a severe burden, and requires us to closely scrutinize the justifications put forward for the waiting period. As the district court correctly recognized, the justification put forward by Defendants—that the waiting period allows for judicial review before the state spends resources on a recount—is simply not compelling enough to justify *de facto* nullifying Plaintiffs' right to invoke the recount procedures afforded them under Michigan law. The district court did not abuse its discretion in determining that Plaintiffs made a sufficient showing of success on the merits in light of the irreparable harm Plaintiffs would have suffered without relief.

The two other TRO factors also justify the district court's decision. First, the TRO did not cause substantial harm to the State of Michigan or its citizens; it merely required the recount to start a day-and-a-half earlier than it otherwise would have. Likewise, given that Michigan has chosen to provide for potential recounts, we believe the public interest was served by relaxing a procedural requirement that would have effectively nullified that right.

Finally, we wish to emphasize the narrowness of the question we decide today. We do not decide that there is a freestanding constitutional right to a recount, or that Plaintiffs validly

invoked a recount under Michigan law, or that Plaintiffs should necessarily prevail on the merits of this suit. We merely hold that given the strong showing of irreparable harm here, Plaintiffs' colorable arguments that their state-created recount right was being arbitrarily abridged, and the relatively minimal stakes involved in starting the recount slightly earlier than it otherwise would have, the district court did not abuse its discretion in granting a temporary restraining order.

## IV.    Defendants' Arguments

Defendants offer several arguments in support of their position, but we pause to address two briefly. First, Defendants argue that Plaintiffs could have initiated a recount or raised concerns about the vulnerability of Michigan's election machinery earlier than they did, and that therefore Plaintiffs' suit should be barred by the doctrine of laches. This argument lacks merit. Plaintiffs indisputably filed their recount petition within two days after the final certification of Michigan's presidential vote. *See* Mich. Comp. Laws § 168.880. We doubt that laches can ever be invoked when Plaintiffs have complied with statutory time limits. But in any event, Defendants have made no showing of the sort of bad faith or inexcusable delay necessary to invoke the doctrine here. Moreover, Plaintiffs do not ask this Court to find that Michigan's election results were tainted by fraud; they merely argue that the waiting period law was unconstitutional as applied to them. Given the narrowness of the issues properly before the Court, we decline to weigh in on any issues concerning the propriety of the recount or Michigan's presidential canvas, which are best left to the Michigan courts at this stage.

Second, Defendants urge us to abstain from deciding the questions presented in this appeal under the doctrines announced in *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *Pullman* abstention is appropriate where a litigant asks a federal court to reach a constitutional question predicated on the federal court's own, non-binding interpretation of state law. *Moore v. Sims*, 442 U.S. 415, 425 (1979). *Burford* abstention is appropriate "where timely and adequate state-court review is available and

(1) a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar, or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002).

Neither doctrine is appropriate here. We have not decided a single state law issue or interpreted a single Michigan statute in deciding this appeal. We merely took the waiting period law at face value, and evaluated whether the district court abused its discretion in temporarily restraining its operation. This inquiry involved only established federal standards governing TROs, and federal constitutional principles stemming from the First and Fourteenth Amendments. Because we did not decide any state law questions, *Pullman* and *Burford* are inapposite.

## CONCLUSION

For the foregoing reasons, we hold that the district court did not abuse its discretion by issuing a temporary restraining order halting operation of the waiting period law. We therefore **AFFIRM** the district court's temporary restraining order. If, subsequently, the Michigan courts determine that Plaintiffs' recount is improper under Michigan state law for any reason, we expect the district court to entertain any properly filed motions to dissolve or modify its order in this case.

**McKEAGUE, Circuit Judge, dissenting.** Because it is obvious that the district court overstepped its bounds in numerous ways by inserting itself into what were orderly election processes in accordance with state law, I dissent from the denial of the motion to stay.

Let's consider the chronology once again. Presidential election candidate Jill Stein received approximately one percent of the nearly 4.8 million votes cast in Michigan in the presidential election that culminated on November 8, 2016. Results of the election have been

certified by the Board of State Canvassers and names of the presidential electors have been transmitted by the Michigan Governor to the United States Secretary of State, as required by federal law.  Undeterred by the results of the election, Stein filed her petition for a recount under M.C.L. § 168.879, less than one week ago, on November 30, 2016, alleging she was "aggrieved on account of fraud or mistake."   Objections to the request were filed on December 1, 2016, and the Board of State Canvassers timely addressed the matter, held a hearing, and rejected the objections on December 2.  Michigan Director of Elections, defendant Christopher M. Thomas, in fulfillment of his duties and in compliance with M.C.L. § 168.882(3), thereupon directed that the recount would commence on December 7, after two business days had elapsed since the ruling of the Board.  Thus, an orderly and *expedited* process for addressing Stein's request in accordance with state law was well under way.

Stein was not satisfied however.  She commenced litigation in federal district court on December 2, demanding, in contravention of an undisputedly clear and unambiguous state law, that the recount be commenced *immediately*.  She moved the court for a temporary restraining order enjoining enforcement of the state-law mandated "delay" until December 7.  The district court took the extraordinary measure of scheduling a hearing on Sunday morning at 10:30 a.m., December 4, and issued a temporary restraining order requiring commencement of the recount at noon on Monday, December 5.  That is, even though a temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits, *see University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), the district court peremptorily intervened to *disrupt* the status quo.  And the court did so on the thinnest of legal foundations—based on a speculative showing of harm and undefined showing of legal entitlement to relief.

The district court justified its decision by concluding that Stein had shown "a likelihood of success on the merits" of the claim that the two-day waiting period could result in a violation of the First Amendment right to vote, without even *identifying any* factual basis for Stein's allegation that she was aggrieved on account of fraud or mistake.  Instead, the court relied implicitly on the showing that Michigan's voting machines, like voting machines across the nation, are vulnerable to *potential* hacking or cyberattack—despite the absence of any evidence of such tampering.  Nor did the district court identify the precise nature of the supposed violation of the First Amendment right to vote posed by this vulnerability.

The court observed that the right to vote is fundamental, albeit not defined in the Constitution, and paid lip service to the *Anderson/Burdick* standard that applies to such a claim. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).  Yet, the court failed to apply the first step of the *Anderson/Burdick* analysis, which requires assessment of the character and magnitude of the asserted injury to First Amendment rights.  If the state regulatory scheme is generally applicable and non-discriminatory, as is Michigan law, then, pursuant to the Supreme Court's most recent guidance, it is deemed to impose no more than a minimal burden and is presumed to pass constitutional muster.  *Ohio Democratic Party v. Husted*, 834 F.3d 620, 631 (6th Cir. 2016) (citing *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 200, 202–03 (2008)).  The district court failed to explain how permitting the recount process to proceed in accordance with state law imposed or threatened *any* cognizable burden on Stein's or co-plaintiff Louis Novak's right to vote.

The majority essentially gives Stein a pass on this fundamental prerequisite to injunctive relief, observing that she was only required to meet a "lowered bar" because her showing of irreparable harm is "extremely strong."  Really?

The district court concluded that Stein had shown a likelihood of irreparable harm if, pursuant to Michigan law, the recount were not commenced until December 7, based on the showing that completing the recount by the December 13 "safe harbor date" would be a "monumental undertaking." There is no dispute: the recount process is demanding. But the process is governed by presumptively valid state law. Stein made her request for recount, under state law, only on November 30; and her request was in the process of being *granted* under the provisions of that same state law when she, on the same day objections were overruled, December 2, complained that the state law process was too slow. For the sake of accelerating the process by two days, the district court ordered defendants, in contravention of state law, to commence the recount immediately, on December 5. Yes, the time period within which the recount must be accomplished, per federal law, is short, but the record is devoid of any showing that the constitutionally protected right to vote, whether Stein's or that of co-plaintiff Michigan voter Louis Novak, is threatened with irreparable harm if the statutorily prescribed process is permitted to run its course.

The majority reads "monumental undertaking" as synonymous with "impossibility" and characterizes the two-day period as "effectively nullifying" Stein's right to a recount. And this is the "extremely strong" showing of irreparable harm that is said to obviate the need for the court to scrutinize likelihood of success on the merits. Yet, the record is devoid of any showing that the recount will not be timely completed. Nor is it clear, to anyone apparently, what the impact of post-December 13 completion would be. December 13 is simply a "safe harbor date." The electors do not actually meet and cast their votes until December 19. There is simply no evidence on the likelihood of such dire consequences as Stein and the majority imagine. Speculation about what may or may not happen in the future is hardly justification for federal

court interference with what is by all appearances an orderly and expedited state election process.

Further underscoring the impropriety of the district court's interference is its own acknowledgement that proceedings challenging the Board of State Canvassers' decision were pending in the Michigan Court of Appeals and Michigan Supreme Court since December 2 and that the Michigan Court of Appeals had scheduled a hearing on Michigan Attorney General Bill Schuette's emergency complaint for writ of mandamus on December 6. Again, it was and is abundantly clear that Michigan authorities in the executive and judicial branches have taken great pains to fairly address the merits of Stein's request under the law.

So, stepping back to behold this picture with perspective, we find that, even though the Constitution recognizes the states' clear prerogative to regulate election processes and to thereby ensure they are accompanied by fairness and order, not chaos, *see Ohio Democratic Party*, 834 F.3d at 626–27; and even though a temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo (not demolishing it) pending further proceedings on the merits; and even though plaintiff Stein was unable to muster even the barest showing of likelihood of success and irreparable harm; and even though state court proceedings to ensure the fairness of any recount are currently pending and poised to address any demonstrated need for relief, a district judge has seen fit to deploy the judicial power of the federal sovereign to intrude upon proceedings under state law that are traditionally entrusted to the states . . . simply because he thinks, in regard to a statutory two-day period (!), that he has a better idea than the elected representatives of the people of the State of Michigan . . . and because he can.

Moreover, in manifest display of partiality and overreach, the district court purports to have granted relief even more expansive than was requested.  Whereas plaintiff Stein asked the court to enjoin any delay in commencement of the recount *prior to* December 7 (when the recount otherwise would have been commenced in accordance with state law), the district court purports to have not only ordered immediate commencement of the recount, but *continuation* thereof "until further order of this Court."  And not only that:  the district court further defined the required continuation as including the requirement that "all governmental units participating in the recount to assemble necessary staff to work sufficient hours to assure that the recount is completed in time to comply with the safe harbor provision of 3 U.S.C. § 5."  R. 16, Temporary Restraining Order at 7–8, Page ID 678–79.

To this, I can only respond, "Astounding!"  "Just who do we think we are?"  *Obergefell v. Hodges*, 135 S.Ct. 2584, 2612 (2015) (Roberts, J., dissenting).

At the very least, we should stay any effect of the temporary restraining order that extends beyond 12:01 a.m. on December 7, 2016.  Even the district court's own findings and conclusions, as insufficient as they are, justify absolutely no relief beyond that time, when state officials were prepared to comply with state law.  By ordering commencement of the recount on December 5, in advance of the December 7 date provided for under state law, the district court granted Stein all the relief she had requested in her motion.  By ordering continuation and completion of the recount by December 13, the court purported to assert "power" in excess even of the "authority" it had illegitimately claimed for itself.  This overreach should be seen for what it is:  a naked and illegitimate power grab that should stand as no impediment to the state courts' orderly adjudication of the state law issues before them in accordance with state law.

My colleagues seem to recognize this infirmity in the district court's order by observing that, depending on the outcome of proceedings in the state courts, they "expect the district court to entertain any properly filed motions to dissolve or modify its order in this case."  In my opinion, this should be read to mean that, if the Michigan courts conclude that Stein has no right to a recount, the temporary restraining order should be vacated.  If, on the other hand, the Michigan courts allow the recount to proceed, then the two-day waiting period relief granted in the temporary restraining order will essentially have been mooted by the passage of time.  Either way, the temporary restraining order will cease to have any continuing vitality.

In my opinion, no issue of constitutional magnitude is implicated by any of plaintiff Stein's pleadings.  By issuing the temporary restraining order, the district court abused its discretion.  By refusing to stay this judicial overreach, the majority perpetuates, and lends the Sixth Circuit's imprimatur to, modern confusion surrounding the federal courts' *limited* oversight of state election processes.  I respectfully dissent.


                              ENTERED BY ORDER OF THE COURT


                              _____
                              Deborah S. Hunt, Clerk